FILED
2009 Jan-23 PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TERRY HAMM AND LEONARD HAMM, <br><br> PLAINTIFF, <br><br> v. <br><br> NCB MANAGEMENT SERVICES, INC, <br><br> DEFENDANT. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NUMBER
**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action brought by the Plaintiffs, Terry Hamm and Leonard Hamm, for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of Alabama's common laws set forth herein.

### JURISDICTION AND VENUE

This Court has jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367. Venue is proper in that the Defendant transacted business here, and the Plaintiff resides here.

### PARTIES

1.  Terry Hamm ("Terry"), is a resident and citizen of the state of Alabama, Tuscaloosa County, and is over the age of twenty-one (21) years.

2.  Leonard Hamm ("Leonard"), who is Terry Hamm's father, is a resident and citizen of the state of Alabama, Tuscaloosa County, and is over the age of twenty-one (21) years.

3. The Defendant NCB Management Services, Inc. ("Defendant") is a Pennsylvania corporation with its principal place of business in the state of Pennsylvania. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Tuscaloosa County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. §1692a(6).

## FACTUAL ALLEGATIONS

4. Terry purchased a car and financed it through Chrysler Financial. Terry became unable to make the payments on the car and turned it back in to the dealer he purchased it from. Subsequently, the dealer resold the vehicle and a deficiency balance remained on Terry's loan.

5. Beginning in April, 2008, Defendant began a campaign of harassment against Terry and his family in an attempt to collect on the alleged debt, which was incurred for personal, family, and/or household use.

### *Communications without required disclosures*

6. Agents/employees of Defendant have called on many occasions and spoke to the Terry at his home.

7. In the phone communications, the agents/employees of Defendant have failed to indicate that they "are a debt collector" and that the call "is an attempt to collect a debt" and that "any information obtained would be used for that purpose."

### *Communications with third parties*

8. On many occasions, agents/employees of Defendant spoke with Terry's mother and father, who live in Terry's home, and disclosed information to them about Terry's alleged debt. Terry's mother and father are in no way liable for the alleged debt.

### *Harassing and Threatening Communications*

9. On many calls, the agent/employee of Defendant was extremely rude and belligerent to Terry and his parents.

10. Agents/employees of Defendants called Terry's home incessantly, 3 times per day or more on many occasions.

11. The agents/employees were extremely rude, belligerent, and overagressive to Terry and his parents.

12. One agent/employee of Defendant told Terry's mother that "he could file charges against Terry" and that if they "didn't get the money up" he would do it.

13. One agent/employee of Defendant told Terry's mother that she and her husband should take out a loan and pay the alleged debt.

### *Misrepresentation and Deception*

14. An agent/employee who identified himself as Joseph Nicolazzi ("Nicolazzi") told Terry that he could settle the alleged debt for $2,400.00, an amount less than the total alleged debt.

15. Terry's father, Plaintiff Leonard Hamm, called Defendant and confirmed the agreement, and subsequently wired the funds to Defendant on behalf of Terry.

16. The following day, Nicolazzi called Terry and told him that Chrysler would not accept the settlement of $2,400.00, but rather required $3,800.00, so Terry would have to pay another $1,800.00 to settle the alleged debt.

17. Terry said that he was unable to pay anymore funds and insisted that the alleged debt was settled based on Nicolazzi's previous representation.

18. Nicolazzi stated that since he had made a mistake or oversight, he would talk to his

supervisor and see if there was something he could do.

19.     Nicolazzi's "supervisor" subsequently called Terry and said that he could either return the money, or Terry could pay the extra amount to settle the debt.

20.     Terry told the "supervisor" that he could not pay any more, and that they should return the money paid by his father, Leonard.

21.     The "supervisor" told Terry that he had "refused" the payment and that Leonard could go back to his bank and reverse the transaction.

22.     Defendant had, in fact, accepted the payment from Leonard, and knew that it was not possible for Leonard to "reverse" the transaction.

23.     To date, Defendant has not sent the payment back, and Terry has received communications from other collection agencies attempting to collect the alleged debt.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT

24.     The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

25.     The Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Terry's alleged consumer debt.

26.     The Defendant used false representations and/or deceptive means to attempt to collect a debt in violation of §§1692e(11).

27.     The Defendant violated §1692d by using harassment and abusive means in attempting to collect a debt.

28. The Defendant violated § 1692c(a)(2) by communicating with a consumer when the Defendant knew the consumer was represented by an attorney.

29. As a proximate result of the Defendant's actions, Plaintiffs were caused to suffer damages.

## COUNT TWO
## NEGLIGENT TRAINING AND SUPERVISION

30. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

31. The Defendant knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

32. The Defendant knew or should have known that said conduct was improper.

33. The Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

34. The Defendant negligently failed to train and supervise collectors on the FDCPA as it relates to communications with consumers and third parties.

35. As a result of the Defendant's negligence, the Plaintiffs were caused to suffer damages.

## COUNT THREE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

36. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

37. The Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiffs.

38. The Defendant knew or should have known that the said conduct was improper and illegal.

39. The Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper illegal conduct.

40. The Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to communications with consumers.

41. As a result of the Defendant's recklessness and wantonness, the Plaintiffs were caused to suffer damages.

## COUNT FOUR
## INVASION OF PRIVACY

42. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

43. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the FDCPA, when it stated as part of its findings:

> Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, **and to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

44. The Defendant undertook and/or directed communications to the Plaintiffs constituting an invasion of privacy, as set out and described in the common law of the State of Alabama. Said communications were made in disregard for Plaintiffs' right to privacy. Said communications were made to force, coerce, harass, embarrass and/or humiliate the Plaintiffs into paying a debt.

45. Said invasions were intentional, willful, and malicious, and violated the Plaintiffs' privacy. The Plaintiffs aver that the communications were made by individuals who were the employees of and/or acting on behalf of Defendant.

46. Said communications constitute the wrongful intrusion into his solitude and seclusion.

47. As a proximate consequence of said invasion of the right of privacy, the Defendant has caused the Plaintiffs to suffer embarrassment, worry, humiliation, anxiety, nervousness, and mental anguish.

## COUNT FIVE
## FRAUD

48. The Plaintiffs adopt the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

49. Defendant represented to Plaintiffs that a payment in the amount of $2,400.00 would settle the alleged debt in full. This representation was known, or should have been known, by Defendant to be false.

49. Plaintiffs relied on the Defendant's false representation to his detriment, when they caused $2,400.00 to be sent to Defendant.

50. Because of Defendant's misrepresentation and Plaintiffs' detrimental reliance, Plaintiffs were caused to suffer damages.

### *Respondeat Superior Liability*

51. The acts and omissions of the agents/employees of Defendant who communicated with Plaintiffs were committed within the time and space limits of their agency relationship with their principal, the Defendant.

52. The acts and omissions by the agents/employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

53. By committing these acts and omissions against Plaintiffs, the agents/employees were motivated to benefit their principal, the Defendant.

54. Defendant is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its agents/employees, including but not limited to violations of the FDCPA, in their attempts to collect this alleged debt from Plaintiffs.

## AMOUNT OF DAMAGES DEMANDED

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand a judgment as follows:

A. Declaratory judgment that the Defendant's conduct violated the FDCPA;

B. Statutory damages of $1,000, actual damages, and costs and reasonable attorney fees from the Defendant for the violations of the FDCPA (15 U.S.C. §1692k);

C. Compensatory and punitive damages against Defendant on Plaintiff's state law claims for damages due to the Negligent Training and Supervision, Reckless and Wanton Training and Supervision, Invasion of Privacy, Fraud, and

D. Such other relief that this Court deems just and proper.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

_/s/ W. Whitney Seals_
W. Whitney Seals
ASB 8890-W81S
Pate & Cochrun, LLP
P.O. Box 10448
Birmingham, AL 35202-0448
Phone (205) 323-3900

_/s/ Michael W. Lindsey_
Michael W. Lindsey
ASB 4328-A63L
Lindsey Law Firm, LLC
One Perimeter Park Dr., Ste 330 N
Birmingham, AL 35243
Phone: (205) 970-2233